UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANTHONY E. MALUSKI,  §<br>     Plaintiff,  §<br>  §<br>v.  §<br>  §<br>U.S. BANK, N.A., as Trustee, successor by  §<br>merger to FIRSTAR BANK, N.A.,  §<br>successor in interest to FIRSTAR BANK  §<br>MILWAUKEE, N.A., as Trustee for  §<br>SALOMON BROTHERS MORTGAGE  §<br>SECURITIES VII, INC. FLOATING  §<br>RATE MORTGAGE PASS-THROUGH  §<br>CERTIFICATES SERIES 1999-NC4  §<br>     Defendants.  § | Civil Action No. 4:07-CV-00055 |

**REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT U.S. BANK, N.A., AS
TRUSTEE'S FIRST AMENDED MOTION FOR FINAL SUMMARY JUDGMENT**

**COMES NOW**, Defendant U.S. Bank, N.A., as Trustee, Successor by Merger to Firstar Bank, N.A., Successor in Interest to Firstar Bank Milwaukee, N.A., as Trustee for Solomon Brothers Mortgage Securities VII, Inc. Floating Rate Mortgage Pass-Through Certificates Series 1999-NC4 ("U.S. Bank") and files this its Reply to Plaintiff's Response (the "Response") to its First Amended Motion for Final Summary Judgment (the "Motion").

**I.
SUMMARY**

The summary judgment evidence conclusively establishes that U.S. Bank is no longer the holder or owner of Maluski's loan, has no interest in Maluski's loan, and is not a proper party to this suit. Alternatively, the fees charged on the loan were proper, and U.S. Bank did not violate the Texas Constitution. Despite the unsupported arguments in Maluski's Response, his claims against U.S. Bank are without merit as a matter of law, and, therefore, summary judgment should be granted.

## II.
## TRANSFER OF LIEN IS VALID

Maluski first argues that U.S. Bank has not shown evidence that it no longer holds an interest in the loan. (ECF Docket No. 35 at ¶ 6.) Specifically, Maluski objects to Exhibit A-5 attached to the Declaration of Marshelle Hawk, a copy of the June 14, 2007 Transfer of Lien to Property Asset Management, Inc. ("PAMI"). Maluski first objects because the signature of Neil Dyson, a Servicing Officer for Ocwen Loan Servicing, LLC (the attorney-in-fact for U.S. Bank) is notarized prior to the effective date of the Transfer. Maluski's objection that a document was signed before it the actual effective date is wholly immaterial. For example, a declarant may sign a declaration several days or weeks before a party files that declaration as evidence for a motion. Maluski does not allege that the Transfer of Lien does not meet all of the legal requirements for a transfer. Maluski cites to no authority providing that a transferor sign an assignment the same day it is to become effective. Maluski is grasping at straws.

Maluski next objects to the Transfer of Lien because it says the loan is transferred to "Property Asset Management." (ECF Docket No. 35 at ¶ 8.) It is important to note that the correct address for transferee, Property Asset Management a/k/a PAMI, is noted on the Transfer. (ECF Docket No. 31 at Exh. A-5.) Further, US Bank presented evidence that the loan transferred to PAMI in the Declaration of Marshelle Hawk, attached to the Motion. Specifically, Ms. Hawk declared that the loan transferred to PAMI. (*Id*. at Exh. A.) Both Ms. Hawk's Declaration and the Transfer of Lien clearly demonstrate the loan was transferred by U.S. Bank to PAMI. Further, Ocwen Loan Servicing, LLC ("Ocwen") continued to service the loan after the transfer and Ocwen's address was provided on the Transfer if Maluski (or any member of the public) had inquiries regarding the Transfer. Maluski's smoke and mirrors objection to the Transfer because it does not contain the word "Inc." after "Property Asset Management" is and irrelevant.

Maluski also objects to the Transfer of Lien because it references a P.O.A. (Power of Attorney), which Maluski claims "does not say what is allowed." (ECF Docket No. 35 at ¶ 7.) Maluski objects only to distract the Court from the relevant issue: that the Transfer of Lien transfers all ownership interest to PAMI. An instrument recorded in the official county property records is notice to the public of the existence of the instrument and is subject to inspection by the public. TEX. PROP. CODE § 13.002. The P.O.A referenced on the Transfer of Lien is recorded and is available to the public, including Maluski, to determine "what it allows." (*See* ECF Docket No. 31 at Exh. A-5) ("P.O.A. Recorded on: April 16, 2004, Book: 554-49, Page: 1175, Instrument: X538453). Accordingly, Maluski can see for himself what the POA referenced in the Transfer "allows" by viewing the property records. However, for purposes of this case, the Transfer of Lien itself clearly divests U.S. Bank of any interest in the loan by virtue of the transfer to PAMI. U.S. Bank no longer holds an ownership interest and is an improper party to this suit. Accordingly, U.S. Bank is entitled to final summary judgment.

## III.
## SERVICING DOCUMENTS NOT RELEVANT

Maluski's claim that U.S. Bank must produce its servicing agreement with Ocwen and Ocwen's "contract to service the loan after the transfer," is not supported by any legal authority. The servicing agreement and "contract to service the loan after the transfer" are unnecessary for U.S. Bank's grounds for summary judgment. In her Declaration, Ms. Hawk verifies that Ocwen was the servicing agent for U.S. Bank, and is the current servicing agent for PAMI. (ECF Docket No. 31 at Exh. A.) Maluski presents no evidence to question the validity of Ms. Hawk's veracity in declaring that Ocwen was the servicing agent for U.S. Bank, or is the current servicing agent for PAMI.

U.S. Bank and PAMI's agreements regarding servicing are highly confidential and proprietary, and are wholly irrelevant to the determination of what party holds an ownership interest in the loan. Maluski attempts to divert the court from the evidence that U.S. Bank is no longer the note holder with his requests for unnecessary and irrelevant documents related to servicing. There are no claims or defenses by any party to this lawsuit that U.S. Bank did not "compl[y] with the applicable Pooling and Servicing Agreement's procedure for changing the trustee from U.S. Bank to any other entity." (*See* ECF Docket No. 35 at ¶ 11.)

Further, Maluski has no standing to challenge a contract between U.S. Bank and a servicer because Maluski is not a party to such contract, an assignee of the contract, or an intended third party beneficiary of the servicing contract. *See, e.g., Delaney v. Davis*, 81 S.W.3d 445, 449-50 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (party must be itself damaged before it can sue for breach). The Note and Security Instrument themselves provide that they may be transferred without notice to Maluski, as follows: "I [Maluski] understand that Lender may transfer this Note." (ECF Docket No. 31 at Exhibit A-1); and "The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower [Maluski]." (*Id*. at Exh. A-3.) Maluski can not object to the transfer because he agreed to transfer without notice in the Note and Security Instrument; he is not a party to the servicing contracts and was not injured by the transfer because he voluntary agreed to transfers. U.S. Bank conclusively proved it does not hold the Note and is not a proper party and, therefore, summary judgment should be granted in its favor on all of Maluski's claims against it.

## IV.
## REVISED HUD-1 SETTLEMENT STATEMENT

Maluski next argues that the Revised HUD-1 is invalid because (1) it does not contain a date or signature and (2) any revision after June 29, 1999 is void because Plaintiff could not have

rescinded the loan after June 29, 1999. (*See* ECF Docket No. 35 at ¶¶ 19-23.) With respect to the first claim regarding the Revised HUD-1 Settlement Statement, Maluski's argument cuts against his own Complaint. The original HUD-1 Settlement Statement on which Maluski tends to rely, attached as Exhibit 1 to his Complaint, does not contain a date or signature on the first page. Only the second (and last) page of the HUD-1 is signed, both at the time of closing and on the date the Revised HUD-1 was issued.[1] (*See* ECF Docket No. 1 at Exh. B.)

However, even disregarding Maluski's inconsistent position in his Response, the Revised HUD-1 is proper under the cure provision of the Texas Constitution. Prior to September 1, 2003, the Constitution provided that a lender may cure any violation of Section 50 of the Constitution within a "reasonable time" after receiving notice of a defect. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x). For loans originated after September 1, 2003, the defect must be cured by the sixtieth (60th) day after notice. *Id*.

In this case, the title company issued a revised HUD-1 within five (5) days of the loan closing, clearly within a reasonable time. *See, e.g.*, *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001); *Summers v. Ameriquest Mortgage Co.*, No. 14-06-00734-CV, 2008 Tex. App. LEXIS 254, at *14 (Tex. App.—Houston [14th Dist.] January 15, 2008)[2] (the Texas Constitution's cure provision gives lenders a reasonable time to correct mistakes and applies to *all* Constitutional provisions relating to home equity loans); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147 (Tex. App.—Fort Worth 2007, pet. filed) (three months after notice was a reasonable time to cure). The deadline for Maluski to rescind the loan transaction is not relevant

---

[1] It is also interesting to note that Plaintiff attached a copy of the Revised HUD-1 to his Complaint, which is identical to the copy attached to the Motion, with the exception that the copy attached to Plaintiff's Complaint is dated June 30, 1999. U.S. Bank relies on the copy of the HUD-1 that was subpoenaed from the title company and attached to its Motion. However, Plaintiff argues about the date of the revised HUD-1 when he himself admitted it was dated June 30, 1999 when he attached a copy of it to his Complaint. (*See* ECF Docket No. 1 at Exh. B.)
[2] A case in which Maluski's counsel in this case was counsel of record for the appellant, Kelly Lee Summers.

to the analysis of whether the fees were properly charged or whether the lender reasonably cured an alleged violation by issuing a Revised HUD-1 with final charges five days after the loan closed  As noted in *Fix*, the lender could have issued a Revised HUD-1 at any "reasonable time" after it was notified about a potential violation of fees charged in excess of three percent (3%) of the principal amount of the loan.  Maluski's argument that any attempt to cure any Constitutional violations more than three days after closing (because of his deadline to rescind) is absurd and inconsistent with the cure provision of Section 50(a)(6)(Q)(x).

## V.
## PROPER FEES WERE 3% OF THE PRINCIPAL

Maluski contends that he was required to pay charges in excess of three percent (3%) of the principal amount of the loan at closing, in violation of the Texas Constitution.  However, as explained in U.S. Bank's Motion, the fees charged to Maluski on the Revised HUD-1 were exactly 3% of the principal amount of the loan.  Three percent (3%) of the original principal amount of the loan ($116,250.00) is $3,487.50—the exact amount the Revised HUD-1 shows Maluski was "required to pay."  (*See* ECF Docket No. 31 at Exh. B.)

Maluski tries to confuse the argument, claiming that U.S. Bank makes a distinction between "required to pay" and "charged."  (ECF Docket No. 35 at ¶¶ 25-28.)  There is a distinction without a difference: whether Maluski was "charged" $3,487.50 or was "required to pay" $3,487.50 does not change the fact that the closing costs were NOT in excess of three percent of the original principal amount of the loan.  Furthermore, Maluski offers no evidence to rebut the authority presented by U.S. Bank that interest is not a closing cost. U.S. Bank is entitled to summary judgment on its ground that Maluski did not pay in excess of 3% in closing costs.

## VI.
## YSP IS INTEREST

Maluski's sole argument for the inclusion of the yield spread premium as interest is the definition of interest in the Texas Finance Code. (*See* ECF Docket No. 35 at ¶¶ 36-42.) Section 302.001 of the Finance Code applies to claims of usury. *See* Tex. Fin. Code § 302.001 *et seq.* The issue in this case is whether the YSP is included as interest, not whether the interest rate charged to Maluski on the underlying loan transaction was usurious. In any event, Maluski does not describe why he believes the YSP is not included in the definition of interest in Section 302.001. Time price differential is defined in the same section as:

> [A]n amount, however denominated or expressed, that is: (A) added to the price at which a seller offers to sell services or property to a purchaser for cash payable at the time of sale; and (B) paid or payable to the seller by the purchaser for the privilege of paying the offered sales price after the time of sale.

TEX. FIN. CODE § 302.001(16). The YSP is not a "time price differential" as defined. As more fully explained in U.S. Bank's Motion, YSP is paid to the mortgage broker by the lender outside of closing; it is not paid by the borrower or charged at closing. *See Discussion* ECF Docket No. 31 at § C. By the very definition of YSP, it is not paid by the borrower and so can not meet the exception of a time price differential under the Texas Finance Code. Federal law characterizes YSP as allowable interest. *See id.* Further, U.S. Bank does not claim that Maluski pays the YSP; in fact, U.S. Bank specifically stated that "YSP is not paid by the borrower but rather the lender." (ECF Docket No. 31 at § C.2.) For these reasons, the YSP is included in interest, which is not calculated as part of the closing costs. U.S. Bank is entitled to summary judgment on the claim that Maluski was required to pay excessive closing costs.

## VII.
## CONCLUSION AND PRAYER

U.S. Bank is entitled to final summary judgment on all claims against it because it conclusively established that it no longer holds an interest in Maluski's loan. In the alternative,

U.S. Bank is entitled to final summary judgment the following grounds: (a) the lender complied with Section 50(a)(6)(E) of the Article XVI of the Texas Constitution by charging fees equal to or less than three percent of the total amount of the loan because the lender did not charge Maluski fees in excess of 3% of the total amount of the loan and because the yield spread premium is not included in closing costs pursuant to federal law; (b) there is no evidence that Maluski paid for a second appraisal; (c) U.S. Bank is entitled to summary judgment on Maluski's request for declaratory relief because there is not a bona fide dispute between U.S. Bank and Maluski.  Maluski's unsupported arguments in his Response are not sufficient to rebut the evidence offered by U.S. Bank in its Motion, and U.S. Bank is entitled to final summary judgment on all claims against it.

**WHEREFORE, PREMISES CONSIDERED**, U.S. Bank requests that this Court grant final summary judgment on all claims against it, that the Court enter a take-nothing final judgment in U.S. Bank's favor that Maluski take nothing and award such other and further relief to which U.S. Bank may be justly entitled at law or in equity.

Respectfully submitted,

By: /s/ Mark D. Cronenwett
**MARK D. CRONENWETT**
Attorney in Charge
Texas Bar No. 00787303
Southern District Admission # 21340

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 4000
Dallas, TX 75202
(214) 672-2151
(214) 672-2351 (Fax)

**LINDSAY L. STANSBERRY**
Of Counsel
Texas Bar No. 24041968
Southern District Admission # 38475

**COWLES & THOMPSON, P.C.**
100 E. Ferguson, Ste. 1202
Tyler, TX 75702
(903) 596-9000
(903) 596-9005 (Fax)

ATTORNEYS FOR DEFENDANT AND
INTERVENOR-PLAINTIFF

### CERTIFICATE OF SERVICE

The undersigned certifies that on the 8th day of May 2008, a true and correct copy of the foregoing document was delivered via ECF notification to the counsel of record listed below.

/s/ Lindsay L. Stansberry
**LINDSAY L. STANSBERRY**

Ira D. Joffe, Esq.
4151 S.W. Freeway, Suite 770
Houston, TX   77027