IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY E. MALUSKI, § | | |
|    PLAINTIFF § | | |
| § | | |
| V. § | | CIVIL ACTION |
| § | | N0. 4:07-cv-00055 |
| U.S. BANK, N.A., as Trustee, § | | |
| successor by merger to FIRSTAR, § | | |
| BANK, N.A. successor in interest to § | | |
| FIRSTAR BANK MILWAUKEE, N.A., § | | |
| as Trustee for § | | |
| SALOMON BROTHERS MORTGAGE § | | |
| SECURITIES VII, INC., FLOATING § | | |
| RATE MORTGAGE PASS-THROUGH § | | |
| CERTIFICATES SERIES 1999-NC4, § | | |
|    DEFENDANT § | | |

**PLAINTIFF'S PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

TO THE HONORABLE JUDGE OF SAID COURT:

**FINDINGS OF FACT**

1. Defendant U.S. Bank has been aware of Plaintiff's contention that the fees charged on the loan were over the three percent cap since at least December 2006, when the state court action was filed.

2. Defendant PAMI's awareness of Plaintiff's additional contention that the Yield Spread Premium charge pushed the loan over the three percent cap was reinforced on June 12, 2008, when Plaintiff filed its Motion For Summary Judgment based on that issue.

3. No party ever offered to make the loan conform to the constitutional

requirements within the allowable time period.

4. PAMI did not pay the entire remaining balance of the Note to acquire its interest in the litigation.

5. PAMI was aware of Plaintiff's claims and the potential forfeiture of all principal and interest before it voluntarily purchased the Note. It took a calculated risk that it would not be paid back the entire balance left on the note.

6. This was not an escrowed loan.

7. Plaintiff has paid a total of $86,004.60 in strictly principal and interest, $89,353.12 when fees related to those payments are included.

## CONCLUSIONS OF LAW

1. To be valid, the Plaintiff's loan had to meet the conditions set out in Section 50(a)(6), Article XVI of the Texas Constitution.

2. The principal balance of the loan was $116,250.00 and three percent of that is $3,487.50; that is the amount of the fee cap for purposes of determining the loan's compliance with the Constitution.

3. The loan origination fee of $3,237.50 plus the appraisal fee of $250.00, both paid to Global Financing, total to the exact amount of the permissible fee cap and there were other fees in the category clearly shown on the settlement sheet.

4. When added to those tow fees, the charges for items such as document preparation, attorney fees, tax services, EPA lien endorsement, other endorsements, messenger fees, escrow fee, and tax certificate on the

      settlement sheet were for items "necessary to originate, evaluate, maintain, record, insure, or service the extension of credit" that exceeded "in the aggregate, three percent of the original principal amount of the extension of credit." Section 50(a)(6)(E), Article XVI, Texas Constitution.

5. There is no evidence that the "credit" shown on the settlement sheet was applied precisely to the charges that could bring the loan within the three percent cap.

6. Even if the credit did reduce the items it was alleged to apply to, it was still an amount that the Plaintiff, as the borrower, was required to pay, as contemplated by the Constitution.

7. The Yield Spread Premium ("YSP") is a charge that is ultimately paid by the borrower and is an item that is contemplated by the three percent cap set out in Section 50(a)(6)(E), Article XVI, Texas Constitution.

8. The YSP is not interest. "...The term does not include time price differential, regardless of how it is denominated. The term does not include compensation or other amounts that are determined or stated by this code or other applicable law not to constitute interest or that are permitted to be contracted for, charged, or received in addition to interest in connection with an extension of credit." Section 301.002(4)Texas Finance Code.

9. There is no evidence of even an illusory credit that would have kept the YSP within the cap when it was added to all the other relevant fees that

Plaintiff had to pay in connection with the loan. There is no evidence of any credit that kept the YSP from being paid by the borrower.

10. The loan is void because Plaintiff gave the required notices of defects to the various servicers, the required corrective action was never taken, and the time to fix the problems, 60 days, has long since expired.

11. Defendant must forfeit all principal and interest on the loan. Section 50(a)(6)(Q)(x), Article XVI Texas Constitution.

12. Within 30 days, Defendant PAMI will tender a check for $86,004.60 to Plaintiff's counsel made payable to Plaintiff and Plaintiff's counsel.

13. Plaintiff'S counsel is granted attorney fees of $32,000. Chapter 38, Texas Civil Practice and Remedies Code, for which Judgment shall issue, including all writs necessary for collection.

14. The lien is also void and not subject to equitable subrogation.

15. PAMI did not pay the entire amount that has been sued for to purchase its interest in the litigation and is not entitled to a lien in the amount that the original lender might have been.

16. "Equitable subrogation applies "in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter." Thus, a party seeking equitable subrogation must show it involuntarily paid a debt primarily owed by another in a situation that favors equitable relief." FRYMIRE ENGINEERING COMPANY, INC. BY AND THROUGH REAL PARTY IN INTEREST, LIBERTY MUTUAL INSURANCE COMPANY, Petitioners, v.

JOMAR INTERNATIONAL, LTD. AND MIXER S.R.L., Respondents. No. 06-0755. (TX June 13, 2008). Citations omitted.

17. PAMI bought its interest in the Note voluntarily and is therefore not entitled to equitable sugrogation for any amount the original lender paid to secured creditors when the loan was originated. Equity does not come in the form of a lottery ticket.

18. "Subrogation to the creditor's rights is available only when the debtor was enriched unjustly; thus, the payor who confers a benefit as a "mere volunteer" is not entitled to this remedy. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 337 (Tex.1980)" *World Help v. Leisure Lifestyles, Inc*. 997 S.W. 2d 662, 681  (Tex. App. Ft. Worth 1998, Rehearing Overruled.)

19. The Defendant shall within 30 days " cancel and return the promissory note to the owner of the homestead and give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit." Section 50(a)(6)(Q)(vii), Article XVI Texas Constitution.

    Respectfully submitted,

      /s/ Ira Joffe
    Attorney for Plaintiff
    Ira D. Joffe , SBN: 10669900
    6750 West Loop South, Suite 830
    Bellaire, TX 77401
    713/661-9898

                888/335-1060 FAX

## CERTIFICATE OF SERVICE

    The foregoing was electronically filed on November 26, 2008 and will be served by ECF according to the court's records.

                /s/ Ira Joffe
                Ira Joffe