**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **ANTHONY E. MALUSKI,** | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| **U.S. BANK, N.A., as Trustee, successor by** | § |
| **merger to FIRSTAR BANK, N.A.,** | § Civil Action No. 4:07-CV-00055 |
| **successor in interest to FIRSTAR BANK** | § |
| **MILWAUKEE, N.A., as Trustee for** | § |
| **SALOMON BROTHERS MORTGAGE** | § |
| **SECURITIES VII, INC. FLOATING** | § |
| **RATE MORTGAGE PASS-THROUGH** | § |
| **CERTIFICATES SERIES 1999-NC4** | § |
| **Defendants.** | § |

**U.S. BANK'S AND PROPERTY ASSET MANAGEMENT, INC.'S**
**MEMORANDUM OF THE LAW**

The Defendant, U.S. Bank, N.A., as Trustee, Successor by Merger to Firstar Bank, N.A., Successor in Interest to Firstar Bank Milwaukee, N.A., as Trustee for Solomon Brothers Mortgage Securities VII, Inc. Floating Rate Mortgage Pass-Through Certificates Series 1999-NC4 ("U.S. Bank"), and the Intervenor-Plaintiff, Property Asset Management, Inc. ("PAMI"), submit to this Court the following memorandum of the law as applied to this case.

**I.  NATURE AND STAGE OF THE PROCEEDINGS**

The plaintiff, Anthony Maluski, sued U.S. Bank seeking a declaration that the lien on his property, which Maluski asserts is held by U.S. Bank, is void and cannot be foreclosed upon.  He also sought a repayment by U.S. Bank of all principle and interest that Maluski paid on his loan before he defaulted.  PAMI intervened in this lawsuit because it, not U.S. Bank, is the current holder of the Texas Home Equity Note ("Note").

Maluski signed the Note, a Texas Home Equity Affidavit and Agreement, and a Texas Home Equity Security Instrument ("Security Instrument") in exchange for a $116,250 loan on which he has been in default for more than three years.

PAMI and U.S. Bank have both filed summary judgment motions.  Should the Court not grant those motions, the case will proceed to a bench trial.  This brief is prepared in anticipation of that trial.

## II.  ISSUES TO BE RULED ON BY THE COURT

1.  Whether Maluski is in default of his obligations because he has not paid as required under the Note for over three years.

   a.  PAMI must prove this by a preponderance of the evidence.  *See Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 160 (Tex. App. 2006) (citing *Sanders v. Harder*, 148 Tex. 593, 598, 227 S.W.2d 206, 209 (1950)).

2.  Whether PAMI is the current holder of the Note and so may recover under both a breach of contract suit and a suit on the Note.

   a.  PAMI must prove this by a preponderance of the evidence.  *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

3.  Whether PAMI will be entitled to collect attorney's fees in the foreclosure action.

   a.  PAMI must prove this by a preponderance of the evidence.  *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

4.  Whether U.S. Bank is not liable because it has no interest in Maluski's property.

      a.   Maluski must prove liability by a preponderance of the evidence. *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

5.   If U.S. Bank does have some interest in the property, whether Maluski cannot obtain the damages he seeks because they are not granted in the relevant portion of the Texas Constitution.

      a.   Maluski must prove liability by a preponderance of the evidence. *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

6.   If U.S. Bank does have some interest in the property, whether U.S. Bank is not liable because the original lender did not charge more than three percent of the total loan in closing costs.

      a.   Maluski must prove liability by a preponderance of the evidence. *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

### III.  SUMMARY OF THE ARGUMENT

PAMI is entitled to relief on both its contract claim and its suit on the instrument itself because Maluski defaulted on the Note, which is currently held by PAMI.  PAMI is entitled to an order of foreclosure, during which PAMI will be entitled to recover all attorney's fees incurred in this matter.

Because all of U.S. Bank's interest has been transferred to PAMI, there is no bona fide dispute between Maluski and U.S. Bank, and Maluski cannot recover either legal or declarative relief against U.S. Bank.  Indeed, the money damages sought by Maluski are

not contemplated by the Texas Constitution.  Even if the merits of Maluski's claim were reached, Maluski was not charged closing fees in excess of three percent of the total loan amount because the yield spread premium ("YSP") is not a cost charged to the borrower at closing and the Revised HUD-1 charged only three percent of the total loan amount.

## IV.  PAMI'S CLAIMS

PAMI seeks to enforce its rights through standard civil remedies, and therefore must prove its case by a preponderance of the evidence.  *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

### A.  Maluski Has Breached His Contract

PAMI is entitled to judgment in its favor on its breach of contract claim because Maluski defaulted on the loan.  The elements of a breach of contract claim are: (1) there is a valid and enforceable contract; (2) the plaintiff performed, tendered performance or was excused from performing; (3) the defendant breached the contract; and (4) the defendant s breach caused the plaintiff s injury.  *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). The plaintiff must show the following in order to prove existence of a valid and enforceable contract between the parties: (1) offer; (2) acceptance; (3) mutual assent; (4) execution and delivery of the contract with the intent that it be mutual and binding; and (5) consideration supporting the contract. *Texas Gas & Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970).

In this case, the Note is a valid and enforceable written contract between the parties, signed by Maluski.  The Note evidences the parties' mutual assent.  *See id.* Further, the signature by Maluski shows the Note was in fact executed by Maluski and delivered to him at closing.  *See id*. PAMI performed under the terms of the Note by

lending Maluski $116,500.00.   Under the terms of the Note, Maluski promised to make monthly payments.   Since June 10, 2005, Maluski has not tendered any payments, either for principal and interest or property taxes, and has therefore breached the terms of the Note.   Maluski's failure to tender payments caused injury to PAMI because it is not collecting on the loan extended to Maluski in almost three (3) years.   Accordingly, Maluski defaulted on the Note, thereby breaching the contract, and PAMI is entitled to prevail.   As of March 6, 2008 the current outstanding total amount owed on the Note was **$128,085.93**.   As its remedy for Maluski's breach, PAMI is entitled to an order of foreclosure.   TEX CONST. art. XVI § 50(a)(6)(D).)

PAMI has incurred attorneys' fees in the amount of $_____.   These attorneys' fees and costs are recoverable from Maluski under the terms of the Note. Generally, a party must segregate fees for recoverable and nonrecoverable claims. *Navigant Consulting, Inc. v. Wilkerson*, 508 F.3d 277, 298 (5th Cir. 2007). However, legal services are so intertwined that they advance both recoverable and non-recoverable claims, the moving party may recover all of the fees. *Id.* (citing *Tony Gullo Motors I, LP v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006).   To the extent the legal services would have been incurred on a recoverable claim, they are not disallowed merely because they do double service. *Chapa*, 212 S.W.3d at 313.   In a breach of employment agreement case, the court has awarded all fees where five causes of action and a defense were rooted in the same transaction and set of facts. *Rx.com v. Hruska*, H-05-4148, 2006 U.S. Dist. LEXIS 82493 at *14-16 (S.D. Tex., Oct. 20, 2006.).

In this case, the defense of the claims brought by Maluski against U.S. Bank and the request for affirmative relief for PAMI (the current note-holder) are clearly

intertwined and the same legal services were required to advance the defense of U.S. Bank and to request relief by PAMI. Maluski brought this suit against U.S. Bank seeking to stop foreclosure on the loan, then held by U.S. Bank. U.S. Bank was required to answer those allegations. U.S. Bank then transferred the note to PAMI, which would like to proceed with the foreclosure initiated by U.S. Bank. Both U.S. Bank and PAMI had to present evidence of the loan history and the payment history and default by Maluski. In addition, U.S. Bank, and now PAMI, had to defend against the Constitutional claims brought by Maluski in attempt to stop a foreclosure and void the lien. The pleadings from all parties are based on the same loan transaction and set of facts. The same legal services were required in the answer, complaint for foreclosure, and motions for summary judgment for U.S. Bank and now PAMI, as the current note holder. The facts and legal theories are so intertwined that the legal services rendered on behalf of PAMI and U.S. Bank necessarily advanced the claims and defenses of the other. PAMI is entitled to its entire claim for attorneys fees.

Accordingly, PAMI is entitled to prevail on its breach of contract claim and to obtain an order allowing attorneys fees because Maluski defaulted on the loan and PAMI has complied with all provisions of the Note and Security Instrument.

### B.  Maluski is Liable on the Note

PAMI also succeeds in its other claim, its suit on the Note.  To prevail on its claim for suit on the note, PAMI must prove:  (1) the existence of the debt or the note; (2) Maluski signed the note; (3) PAMI is the holder of the note; and (4) that a balance is due and owing under the note.  *Doncaster v. Hernaiz*, 161 S.W.3d 594, 602 (Tex. App. San Antonio 2005, no pet.).  On June 25, 1999, Maluski signed the Note for a $116,250.00

6

loan.   PAMI is the current holder of the Note.   As of March 6, 2008 the current outstanding total amount owed on the Note was $128,085.93.  Accordingly, PAMI has conclusively proved all four elements of its claim for suit on the Note against Maluski. As its remedy for Maluski's breach, PAMI is entitled to an order of foreclosure.  TEX. CONST. art. XVI § 50(a)(6)(D).   Further, the attorneys' fees noted above are also recoverable under the terms of the Note during the foreclosure proceedings.

## V.  U.S. BANK'S DEFENSES TO MALUSKI'S CLAIMS

Maluski must prove his claims by a preponderance of the evidence.  *See Brown*, 201 S.W.3d at 160 (citing *Sanders*, 148 Tex. at 598, 227 S.W.2d at 209).

### A.  U.S. Bank is Not a Proper Party

U.S. Bank is not a proper party to this action.  The remedy prescribed in the Texas Constitution Article XVI, Section 50(a)(6)(Q)(x), is only available against "the lender or any holder of the note for the extension of credit."   New Century Mortgage Corporation was the lender in Maluski's home equity loan.  U.S. Bank, a subsequent note holder, transferred its lien to PAMI on April 30, 2007.  U.S. Bank is no longer a holder of the Note.  U.S. Bank has no ownership interest in either the loan or the property securing the Note.  Therefore, U.S. Bank has no interest that could be declared void and no recovery can be had by Maluski against U.S. Bank.

In a related argument, Maluski requests that this Court declare that there is a bona fide dispute between Maluski and U.S. Bank and that U.S. Bank's lien on the subject property is void.  Maluski's Orig. Pet. at § 9.   As previously stated, however, U.S. Bank no longer holds any interest in Maluski's loan and no longer holds a lien on the Subject Property.  As such, there is no dispute between the parties and no lien held by U.S. Bank

that the Court could declare void. Therefore, Maluski's request for declaratory relief against U.S. Bank must be denied.

### B.  The Lender Did Not Charge Closing Fees in Excess of 3%

Even if U.S. Bank were hypothetically a proper party to this lawsuit, it would be entitled to win on the merits of the lawsuit because the lender complied with Section 50(a)(6)(E) of Article XVI of the Texas Constitution by charging fees equal to or less than three percent of the total amount of the loan.

Section 50(a)(6)(E) of the Texas Constitution provides that a lender may not require a borrower on a home equity loan:

> to **pay**, in addition to interest, fees that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount of the extension of credit

(hereinafter referred to as "the 3% cap").  TEX. CONST. Art. XVI § 50(a)(6)(E) (emphasis added).

In this case, the total amount of the loan was $116,250.00.  Accordingly, the lender could not charge Maluski closing fees is excess of $3,487.50, or three percent of $116,250.00.  Maluski was charged only $3,487.50, and therefore the 3% cap was not violated.

### 1.  Yield Spread Premium is Not a Closing Cost Charged to the Borrower

The yield spread premium ("YSP") is not a closing cost charged to the borrower and is not included in the costs subject to the 3% cap.  The YSP is paid to the mortgage broker by the lender outside of closing; it is not paid by the borrower or charged at closing. *See Glover v. Standard Fed. Bank*, 283 F.3d 953, 957 (8th Cir. 2002) (stating

that one method of compensating mortgage brokers is by paying a YSP which permits borrowers to pay up-front closing costs over the life of the loan through a higher interest rate). The borrower, at best, only indirectly pays back the YSP in the form of interest over the life of the loan. Interest is not included in closing costs under the express language in this section, and thus cannot be included in the calculation of the 3% cap on fees. *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 343 (Tex. 2001); *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708, 709 (Tex App. Waco 2002, no pet.). Therefore, the YSP is merely interest and is neither paid directly by the borrower nor charged at closing. However, Maluski still insists that he was required to pay the YSP himself.

Under the Texas Constitution, "pay" is not defined, nor is it defined in the interpretive regulations issued by the Texas Finance Commission. *See* 7 TEX. ADMIN. CODE §153.1 (definitions). However, as noted by the Texas Finance Commission in its interpretive regulation, in order to "pay" a loan origination fee, and thus include it in the calculation of the 3% cap, a borrower must pay or contract for the fee at "the inception or at the closing of an equity loan." 7 TEX. ADMIN. CODE §153.5(15). Further, the interpretative regulations expressly except from the scope of chargeable closing costs those fees, like yield spread premiums, that are paid, not by the borrower, but by the lender. 7 TEX. ADMIN. CODE §153.15(5) ("Charges Absorbed by Lender: Charges a lender absorbs, and does not charge an owner or an owner's spouse that the owner or owner's spouse might otherwise be required to pay are unrestricted and not fees subject to the three percent limitation."); *id.* §153.15(7) ("Charges Paid to Third Parties. Charges an owner or an owner's spouse is required to pay to third parties for separate and

additional consideration for activities relating to originating a loan are fees subject to the three percent limitation. Charges those third parties absorb, and do not charge an owner or an owner's spouse that the owner or owner's spouse might otherwise be required to pay are unrestricted and not fees subject to the three percent limitation. Examples of these charges include attorneys' fees for document preparation and mortgage brokers' fees to the extent authorized by applicable law.).

There is nothing in the Texas Constitutional provisions on home equity loans or the interpretive regulations that would include anything other than fees directly paid by the borrower. Therefore, a literal reading of Section 50(a)(6)(E) would seem to exclude fees paid only indirectly by a borrower, and would only include those that come out of the borrower's pocket directly or from the borrower's funds at settlement of the loan. Because a YSP is paid by the lender to broker outside of closing from the lender's funds and does not come out of the borrower's funds at or before closing, it should be excluded from the 3% cap calculation. The Texas Supreme Court has instructed that, in interpreting the Texas Constitution, courts must "rely heavily on its literal text and must give effect to its plain language" to assure that constitutional provisions are given "the effect their makers and adopters intended." *Doody v. Ameriquest Mortgage Co.,* 49 S.W.3d 342, 344 (Tex.2001).

In 2003, the Ninth Circuit addressed a similar issue involving FHA loans. *Bjustrom v. Trust One Mortgage Corp.*, 322 F.3d 1201 (9th Cir. 2003). The court in *Bjustrom* addressed the issue of whether a YSP violated the FHA's regulation that provided a one percent (1%) cap on fees that can be collected from the mortgagor. *Id.* at 1205. The FHA provision provides: "[t]he mortgagee may collect from the mortgagor

the following charges…(i) $ 20 dollars or one percent of the original principal amount of the loan… whichever is the greater." *Id*. at 1203 *quoting* 24 C.F.R. § 203.27(a)(2)(i). The court held that the regulation means directly collected, not indirectly collected. *Id*. at 1205. "[T]o assert that all borrowers ultimately pay for the yield service and service release premiums though higher interest rates is too strained a reading of 'collect' to compel inclusion of such indirect payments." *Id*. The Court did not include the YSP in the calculation of loan fees because the fees were not collected from the borrowers, but were paid by the lender. *Id*.

Overall, a literal interpretation of Section 50(a)(6)(E) would not include any origination fees other than those actually paid by the borrower directly since there is no reference to indirect fees being included in the 3% cap calculation. As such, because the borrower does not pay the YSP directly, it cannot be included. Therefore, the originator of the loan did not charge Maluski any fees in excess of 3%.

### A. Even if the YSP is indirectly paid by the borrower through interest during the life of the loan it cannot be included in the 3% cap.

Maluski has consistently misinterpreted U.S. Bank's arguments concerning the payment of the YSP and the applicability of federal case law dealing with whether a YSP can be counted in the prepaid finance charges under the Truth in Lending Act (TILA), 15 U.S.C. §1601 *et seq.* or the 8% cap on fees under the Home Equity and Ownership Protection Act (HOEPA), 15 U.S.C. §1639. Maluski has admitted that the Settlement Statement clearly shows the YSP was actually paid outside of closing by the lender, New Century Mortgage. The lender paid the broker a YSP for the broker's work in securing the loan at the higher interest rate. Maluski is paying a higher interest rate, but he never paid the YSP directly; at best he indirectly repays the YSP to the lender over the life of

the loan through a higher interest rate.  Maluski wants to ignore this key fact—a fact which is determinative of the treatment of the YSP under most federal statutes.

Unlike the Texas Constitution which does not address indirect payments, courts interpreting TILA, HOEPA or the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2601 *et seq.* focus on direct versus indirect payment of the YSP; this stems from the definition of "finance charge"—which includes any charge payable directly or indirectly by the borrower and imposed by the lender (directly or indirectly) incident to the extension of credit.  Regulation Z, 12 C.F.R. 226.4(a).  Most federal courts when interpreting these statues and looking to determine whether a borrower "pays" a YSP, examine both how the YSP is paid, and the timing of the YSP payment.  *See, e.g., Glover,* 283 F.3d at 957-58 (discussing the YSP and its definition based on HUD interpretive policy statements).

By its very definition, a YSP is not paid by the borrower but rather the lender. *Glover v. Standard Federal Bank*, 283 F.3d 953, 957-58 (8th Cir. 2002).  "A yield spread premium [YSP] is a bonus paid by a lender to a mortgage broker when the broker originates a loan at an interest rate higher than the lender's approved minimum rate." *Stump v. WMC Mortgage Co.*, 2005 WL 645238, *4 (E.D. Pa. 2005) (citations omitted). As noted in *Stump,* the cost to the borrower for the YSP is not imposed at settlement (and thus it is not part of the prepaid finance charges which serve to lessen the amount financed), but is instead indirectly paid out as interest over the course of the loan (and is thus paid as part of the annual percentage rate).  *Id.*

Therefore, at best, the borrower only pays back the YSP indirectly in the form of interest over the life of the loan (assuming the borrower does not refinance before the

YSP is indirectly repaid).  The fact that the payment is not directly out of the borrower's pocket and is only indirectly paid through interest (if at all) is an important distinction that Plaintiff does not want to address.  Under TILA, courts have found that the YSP is not a prepaid finance charge and cannot be double counted as both a discrete pre-paid finance charge and as interest since interest is a finance charge and is already included in the annual percentage rate (APR) calculation.  *See, e.g., Noel v. Fleet Finance, Inc.*, 34 F. Supp. 2d 451 (E.D. Mich. 1998); *accord,* FRB Commentary to 12 C.F.R. §226.4(a)(3) and 61 F.R. 49237-02 (1996) (enacted in March 1997).

HOEPA has a similar cap to the Texas Constitution, though it is at 8%[1].  In attempts to bring their loans within HOEPA protection by exceeding the 8% cap, numerous borrowers have made a similar argument as Maluski is here—that the YSP is a discrete fee that is actually paid by the borrower and should be included in the cap calculation.  Courts have very consistently rejected such an argument because the YSP is only indirectly paid over the life of the loan and not as a prepaid finance charge.  *See, e.g., Stump* 2005 WL 645238 at *4; *Mills v. Equicredit Corp.*, 344 F. Supp. 2d 1071, 1076-77 (E.D. Mich. 2004); *In re Mourer*, 309 B.R. 502, 505 (W.D. Mich. 2004); *Nunn v. IMC Mortgage Co.*, 308 B.R. 150, 152 (W.D.N.Y. 2004).

Like the HOEPA analysis, since the borrower does not pay the YSP at or before closing, but only indirectly through the life of the loan in the form of interest, it cannot be counted in the origination fees for the purpose of the 3% cap per the Texas Finance Commission because those fees pertain only to fees paid at the inception or closing of the loan.  7 TX ADC §153.5(15); *see also, Box v. First State Bank*, 340 B.R. 782, 787 (S.D.

---

[1] The test under HOEPA is that the total points and fees payable by the consumer at or before loan closing cannot exceed 8 percent of the total loan amount or $400 whichever is greater. 12 C.F.R. §226.32(a)(1)(ii).

Tex. 2006) (stating that regulatory commentary on home equity lending has persuasive value in interpreting provisions setting out the substantive rights and obligations of home-equity lenders and borrowers in Texas even though loan closed before the commentary became effective).  Because Maluski did not pay the YSP out of his own pocket or out of his funds at closing, he cannot add that discrete fee amount to the 3% cap calculation—if he pays the YSP, albeit indirectly, it is an event subsequent to closing.

Further, since he only pays the YSP back indirectly through interest over the life of the loan, Maluski cannot add that amount to 3% cap either.  Interest is not included in closing costs under the express language in the Constitution, and thus cannot be included in the calculation of the 3% cap on fees.  § 50(a)(6)(E); *see also Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 343 (Tex. 2001); *Tarver v. Sebring Capital Credit Corp.*, 69 S.W.3d 708, 709 (Tex App.—Waco 2002, no pet.) (discount points paid by borrower are interest, not fees).[2]

Accordingly, the YSP is not a closing cost included in the Constitution's 3% cap, and Maluski did not pay more than 3% of origination fees at the time his loan was closed. As such his loan is valid and enforceable.

### 2. Revised HUD-1 Charges Only Three Percent of the Total Loan Amount

The final statement of closing costs to Maluski listed them as being $3,487.50 and was stated in a Revised HUD-1 on June 30, 1999.  The original HUD-1 had listed the costs as being $110.00 higher, but the law in effect at the time provided that a lender may cure any violation of Section 50 of the Constitution within a reasonable time after

---

[2] Maluski has made the argument that a YSP does not directly fit the definition under the Texas Finance Code, and as a discrete prepaid finance charge we agree it does not meet the definition.  However, because it arguably is paid back indirectly through interest over the loan, the YSP payment in that form does meet the definition.

receiving notice of a defect. TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).  Despite Maluski's assertion, the deadline for Maluski to rescind the loan transaction is simply irrelevant to the question of how much time the lender had to cure a defect.  *See id.*  Here, the original HUD-1 was corrected by the Revised HUD-1 within five days after closing, which is clearly reasonable and within the allowed period for curing defects.  *See, e.g.*, *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342 (Tex. 2001); *Summers v. Ameriquest Mortgage Co.*, No. 14-06-00734-CV, 2008 Tex. App. LEXIS 254, at *14 (Tex. App. Houston [14th Dist.] January 15, 2008) (the Texas Constitution's cure provision gives lenders a reasonable time to correct mistakes and applies to all Constitutional provisions relating to home equity loans); *Fix v. Flagstar Bank, FSB*, 242 S.W.3d 147 (Tex. App. Fort Worth 2007, pet. filed) (three months after notice was a reasonable time to cure). Maluski was not charged the extra $110, but only the $3,487.50 permitted under the 3% Rule.

Maluski's argument that the Revised HUD-1 was not signed and is therefore invalid is belied by his reliance on the original HUD-1.  The original HUD-1, which he asserts is the one to consider, has no date or signature on the first page.  Only the second (and last) page of the HUD-1 is signed, both at the time of closing and on the date the Revised HUD-1 was issued.

### 3. No $300 Fee Was Incurred or Charged for any Second Appraisal

The appraisal fee noted on the Revised HUD-1 is $250.  Maluski's attempt to push the closing costs past the 3% Rule by asserting that a second appraisal was done for $300 and that the lender attempted to collect it from him several months after closing is without any factual support. Maluski has not produced any documents to support his

claim that a second appraisal was prepared or that he gave notice of the alleged excessive fees. Further, Maluksi admits in his complaint that the lender only attempted to collect for a second appraisal, not that Maluski actually incurred the expenses of the appraisal. Maluski was not required to pay nor did he actually pay $300 for any second appraisal.

The lender did not violate the 3% Rule in any way, and if U.S. Bank is a proper party to this suit, it is entitled to judgment in its favor.

### C.  The Damages Maluski Requests are Not Available

Even notwithstanding the foregoing, Maluski cannot recover as damages "repayment . . . of all amounts previously paid on the loan."  The relevant portion of the Texas Constitution provides that a lender who violates the three percent rule forfeits the principal and interest on the loan.  *See* TEX. CONST. art. XVI § 50(a)(6)(Q)(x).  It does not require the lender to repay the borrower amounts already paid on the loan.  Therefore, even if U.S. Bank could be and were liable for violating the three percent rule, Maluski cannot get the recovery he seeks.

### D.  Equitable Subrogation is Available to PAMI

Strictly in the alternative to the foregoing, PAMI seeks relief pursuant to the doctrine of equitable subrogation.  Under this doctrine "the forfeiture penalty [of the Texas Constitution] does not preclude the lender's recovery of the refinance portion of the loan proceeds that were used the pay the debtor's constitutionally permissible pre-existing debt because the lender was equitably subrogated to the prior lienholders' interests."  *LaSalle Bank N.A. v. White,* 246 S.W.3d 616, 620 (Tex. 2007).  Further, under this doctrine, any secured debt obligations paid by the mortgagee for the benefit of the mortgagor, are similarly subject to the mortgagee's lien interest on the property.  *See*

*id.* Therefore, even if the Court were to determine that a defect existed in the origination of the Loan that was not properly cured, the Security Instrument on file on the Subject Property secures a debt owed by Maluski to PAMI in the amount of the prior secured debt paid off by the loan proceeds, along with advances made for property taxes.

## CONCLUSION

U.S. Bank requests that the Court enter a final judgment in U.S. Bank's favor that Maluski take nothing on his claims against it and award such other and further relief to which U.S. Bank may be justly entitled at law or in equity.

PAMI requests that this Court grant judgment in its favor on its claims for breach of contract and suit on a note against Maluski; that the Court declare that the following sums are secured by the Security Instrument on the Property: the outstanding balance of the Note, prejudgment interest, post-judgment interest, and costs of court; that the Court declare that PAMI may foreclose on the Property pursuant to the Note and the Home Equity Security Instrument; that the Court declare that PAMI recover its attorney's fees and costs, to be included as a debt of the subject loan and not as a monetary award; and that the Court award such other and further relief to which PAMI may be justly entitled at law or in equity.   In the alternative, PAMI requests that this Court grant judgment in its favor on its claims for equitable subrogation against Maluski and that the Court declare that the following sums are secured by the Security Instrument on the Property: the prior secured debt paid off by the proceeds from the Note and all property taxes paid by PAMI or U.S. Bank on the Subject Property that Maluski has not reimbursed.

U.S. Bank and PAMI seek all other relief to which they may be entitled.

Respectfully submitted,

By:   /s/ Mark D. Cronenwett
**MARK D. CRONENWETT**
Attorney in Charge
Texas Bar No. 00787303
Southern District Admission # 21340

**COWLES & THOMPSON, P.C.**
901 Main Street, Suite 3900
Dallas, TX 75202
(214) 672-2000
(214) 672-2020 (Fax)

**LINDSAY L. STANSBERRY**
Of Counsel
Texas Bar No. 24041968
Southern District Admission # 38475

**COWLES & THOMPSON, P.C.**
100 E. Ferguson, Ste. 1202
Tyler, TX 75702
(903) 596-9000
(903) 596-9005 (Fax)

**ATTORNEYS FOR DEFENDANT**

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 26th day of November 2008, a true and correct copy of the foregoing document was delivered via ECF notification to the counsel of record listed below.

Ira D. Joffe
6750 West Loop South
Bellaire, TX 77401

 /s/ Mark D. Cronenwett
**MARK D. CRONENWETT**