IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY E. MALUSKI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-07-0055 |
| | § | |
| U.S. BANK, N.A., as Trustee, | § | |
| successor by merger to FIRSTAR | § | |
| BANK, N.A., successor in | § | |
| interest to FIRSTAR BANK | § | |
| MILWAUKEE, N.A., as Trustee for | § | |
| SALMON BROTHERS MORTGAGE | § | |
| SECURITIES VII, INC. FLOATING | § | |
| RATE MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES SERIES 199-NC4, | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant U.S. Bank, N.A.'s First Amended Motion for Final Summary Judgment (Document No. 31); Intervenor-Plaintiff Property Asset Management, Inc.'s Motion for Final Summary Judgment (Document No. 34); and Plaintiff Anthony E. Maluski's Motion for Summary Judgment (Document No. 39).  Plaintiff seeks to abate a foreclosure action against his homestead.  After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

I.  Background

On June 25, 1999, Plaintiff Anthony E. Maluski, the borrower, contracted with New Century Mortgage Corp., the lender, for a

$116,250 home equity loan (the "Loan"), evidenced by a Texas Home Equity Adjustable Rate Note (the "Note") and secured by a Texas Home Equity Security Instrument (the "Lien") encumbering Plaintiff's homestead.[1]  *See* Document No. 31, exs. A-1 (Note), A-2 (Aff. & Agmt.), A-3 (Lien).  The interest rate on the Loan was 10.750%, subject to biannual adjustment beginning on July 1, 2001.  *See* id., ex. A-1 (Note).  Plaintiff's principal and interest payments of $1,303.10 were due the first day of each month from August 1, 1999, until July 1, 2014.  *See* id., ex. A-1.

According to the final HUD Settlement Statement prepared for the Loan, there were $7,335.94 in settlement charges, $1,777.99 of which was interest not subject to the Texas Constitution's three percent limitation on closing fees that may be charged to an owner acquiring a home equity loan.  Plaintiff received a $2,070.45 credit on the remaining balance of $5,557.95 in fees that count against the three percent limitation, leaving a net amount of $3,487.50 in closing fees actually paid by Plaintiff, a sum exactly equivalent to three percent of $116,250, which was the original principal amount of the loan.  Id., ex. B (HUD Statement).  Separately, New Century paid to the mortgage broker, Global

---

[1] The legal description of Plaintiff's homestead property securing the home equity loan is: "Lot Fifteen (15), in Block Eleven (11) OF NORHILL ADDITION, a subdivision in Harris County, Texas, according to the map or plat thereof recorded at Volume 6, Page 3 of the Map Records of Harris County, Texas."  *See* Document No. 1, ex. Orig. Pet.; Document No. 31, ex. A-3.

Finance, a $2,325 yield spread premium ("YSP") outside of closing.[2]
*See* <u>id.</u> at line 811.[3]

On July 2, 1999, New Century assigned the Note and Lien to U.S. Bank. *See* Document No. 31, ex. A-4. The summary judgment evidence is that Plaintiff has not tendered any Loan payments since June 10, 2005. *See* Document No. 34, ex. A (Hawk Decl.) ¶ 8. Because of Plaintiff's failure timely to remit payments, the loan servicer, Ocwen Loan Servicing LLC, sent Plaintiff a Notice of Default on August 15, 2005, which demanded payment of the amounts owed by September 15, 2005, lest Ocwen accelerate the Loan payments and exercise its right to foreclose. *See* <u>id.</u>, ex. A-7 (Notice of Default). Plaintiff never remitted payment. <u>Id.</u>, ex. A (Hawk Decl.) ¶ 8.

---

[2] YSPs are lump sums that lenders may pay to mortgage brokers when the broker originates a loan at an interest rate above the lender's par rate for the borrower.

[3] Plaintiff's objection to the final HUD Statement proffered by U.S. Bank is without merit. *See* Document No. 35 at 4-5. The final HUD Statement relied upon by Defendants was authenticated by Texas American Title Company's custodian of records, and is consistent with the "Revised" Closing Statement Plaintiff attached to his Original Petition in all respects except the relative amounts of the borrowed funds that were to be remitted to the Internal Revenue Service ($47,118.75) and to Plaintiff himself ($14,555.13). Plaintiff, by letter dated June 25, 1999, to the title company, however, directed that the latter figures be changed so as to disburse only $2,000 to Plaintiff himself and the balance of his loan proceeds to the Internal Revenue Service. The final HUD statement produced by Texas American Title Company and relied on by Defendants is consistent with Plaintiff's instructions and is unrefuted in the summary judgment evidence. Plaintiff's objection is DENIED.

Plaintiff filed the instant suit in state court to abate a pending foreclosure action against his homestead. *See* Document No. 1, exs. Orig. Pet., Plea in Abate. Plaintiff asserts that the Note and Lien are invalid because they violated the Texas Constitution. *See* id., ex. Orig. Pet. U.S. Bank removed on the basis of diversity jurisdiction. U.S. Bank later transferred the Note and Lien to Property Asset Management, Inc. ("PAMI"), which thereafter intervened in this suit. *See* Document No. 31, ex. A-5; Document Nos. 1, 18, 19, 31, 34.[4] According to PAMI, Plaintiff defaulted on and is in breach of the Note, and PAMI seeks a declaration that PAMI may foreclose on Plaintiff's property securing the Note. *See* Document No. 19 at 6-7.

U.S. Bank, PAMI, and Plaintiff each seeks summary judgment. *See* Document No. 31, 34, 39. U.S. Bank contends that it is not a proper party to Plaintiff's suit because it no longer holds the Note or Lien, or, alternatively, that the Note and Lien are valid because the Note did not violate the Texas Constitution insofar as Plaintiff was not charged fees in excess of three percent of the total loan amount. Document No. 31. Plaintiff contends that the Note and Lien are invalid because he was charged fees in excess of

---

[4] Plaintiff objects to Defendant's evidence of the assignment based upon its having been executed under date of June 14, 2007, but not made effective until August 1, 2007, and thereafter filed for record on August 27, 2007. *See* Document No. 35 at 1-4; Document No. 36 at 1-4. Plaintiff's objections are without merit and are DENIED.

the three percent limitation, and thus, U.S. Bank must forfeit "all principal and interest previously paid or to be paid on the Loan. Document No. 39.  PAMI contends that it is entitled to summary judgment on its suit on the Note and for breach of contract. Document No. 34.

## II. Standard of Review

Rule 56(c) provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

5

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). "If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." Id. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

In order to withstand a no-evidence motion for summary judgment, the nonmovant must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 106 S. Ct. at 2552. If the nonmovant fails to make such a showing, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial," and summary judgment must be granted.
<u>Id.</u>

## III.   <u>Discussion</u>

A.   <u>Plaintiff's and U.S. Bank's Motions for Summary Judgment</u>

    1.   Whether YSPs are Properly Treated as "Fees" or "Interest"
       for the Purposes of Article XVI, Section 50(a)(6)(E)

The central legal issue in both U.S. Bank's and Plaintiff's motions for summary judgment is whether the $2,325 YSP paid by the lender, New Century, to the mortgage broker, Global Finance, is a fee subject to Texas Constitution article XVI, section 50(a)(6)(E). Article XVI, section 50(a)(6)(E) of the Texas Constitution provides that a home equity loan is valid only if it, among other things:

> does not require the owner or the owner's spouse to pay,
> in addition to any interest, fees to any person that are
> necessary to originate, evaluate, maintain, record,
> insure, or service the extension of credit that exceed,
> in the aggregate, three percent of the original principal
> amount of the extension of credit[.]

TEX. CONST. art. XVI, § 50(a)(6)(E).   In other words, section 50(a)(6)(E) limits fees, not interest, "'necessary to originate, evaluate, maintain, record, insure, or service the extension of credit' to three percent of the amount of the loan." <u>Tarver v. Sebring Capital Credit Corp.</u>, 69 S.W.3d 708, 709 (Tex. App.--Waco 2002, no pet.) (quoting TEX. CONST. art. XVI § 50(a)(6)(E)).

U.S. Bank contends that the YSP is not a "fee" subject to the three percent limitation because (1) it was not required to be paid by Plaintiff, who is the only person protected by the constitutional restriction, and (2) assuming the lender ultimately recovers the YSP fee it paid to the broker from the borrower's payments of interest on the note, the borrower's payments nonetheless are payments of "interest"--not "fees." *See* Document No. 31 at 7-11.  Plaintiff's argument that the Note is invalid is premised on the notion that the YSP is a "fee" within the meaning of section 50(a)(6)(E) because ultimately the lender recoups the amount of the YSP through Plaintiff's payments of presumably a higher rate of interest on the Note.  If the amount of the YSP paid by the lender to the broker is deemed to be a "fee" required to be paid by the borrower, then Plaintiff was charged in excess of the 3% limitation, and forfeiture of principal and interest is the penalty.  *See* Document No. 39 at 2-4; Document No. 35 at 5-9; TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).  The parties agree that the principal amount of the Loan was $116,250, and that three percent of the principal is $3,487.50.  *See* Document No. 31 at 8 n.2; Document No. 1, ex. Orig. Pet. at 3.

At the outset it is observed that no state or federal case has been cited in which a borrower ever has contended that YSPs separately paid by a lender to a mortgage broker are actually "fees" charged to the borrower that fall within the 3% Texas

constitutional limitation, and the Court has found no such Texas
precedent. The standard for interpretation of the Texas
Constitution was set out in <u>Doody v. Ameriquest Mortgage Co.</u>, 49
S.W.3d 342, 344 (Tex. 2001) (internal citations omitted), which
held:

> When interpreting our state constitution, we rely heavily
> on its literal text and must give effect to its plain
> language.  We strive to give constitutional provisions
> the effect their makers and adopters intended.  We
> construe constitutional provisions and amendments that
> relate to the same subject matter together and consider
> those amendments and provisions in light of each other.
> And we strive to avoid a construction that renders any
> provision meaningless or inoperative.

Moreover, "[t]raditionally the homestead laws have been interpreted
by Texas courts liberally in favor of the homestead owner."
<u>Tarver,</u> 69 S.W.3d at 711.

The constitutional language at issue plainly mandates that, in
order to be valid, home equity loans must "not require *the owner or*
*owner's spouse to pay*, in addition to any interest, fees . . . that
exceed . . . three percent of the original principal amount of the
extension of credit." TEX. CONST. art. XVI, § 50(a)(6)(E) (emphasis
added).  Here, as indicated on the final HUD Settlement Statement,
the lender, New Century, paid to the mortgage broker outside of
closing a YSP fee of $2,325.  *See* Document No. 31, ex. B (HUD
Statement).  Thus, it was the lender--*not the owner, Plaintiff, or*
*the* "*owner's spouse*"--that paid the YSP to the mortgage broker.

9

Although the lender well may expect to recoup the amount of the YSP via return on its investment (i.e., interest on the Loan), so it is with all other of the lender's overhead, expenses, and fees.

This conclusion is consistent with holdings in analogous cases. For example, in <u>Bjustrom v. Trust One Mortgage</u>, a mortgagor alleged that Trust One charged excessive closing fees on a mortgage insured by the Federal Housing Administration (FHA)--a violation of Department of Housing and Urban Development (HUD) regulations. 178 F. Supp. 2d 1183, 1185-87 (W.D. Wash. 2001), *aff'd*, 322 F.3d 1201 (9th Cir. 2003). The HUD regulation provided in pertinent part:

> The [lender] may collect *from the* [borrower] the following charges, fees or discounts: [] A charge to compensate the [lender] for expenses incurred in originating and closing the loan, the charge not to exceed[] $20 dollars or one percent of the original principal amount of the mortgage . . . , whichever is the greater.

*See* 24 C.F.R. § 203.27(a) (emphasis added). Similar to the case at bar, the borrower in <u>Bjustrom</u> "allege[d] that the [YSP is] . . . ultimately 'collected' from the borrower through their interest payments" and thus subject to the one percent limitation. <u>Bjustrom</u>, 178 F. Supp. 2d at 1190. The court in <u>Bjustrom</u>, relied on (1) the "plain reading of the [regulation]"; (2) section 203.27's failure to limit *the interest* that can be collected by a lender; (3) HUD approval of mortgages wherein the YSPs effectively caused the fees to exceed the one percent limit without commenting

10

on the fee limitation; and (4) HUD policy statements declaring that
YSPs are not "illegal per se" without commenting on the one percent
limitation, and concluded that "collection from the borrower means
collecting *directly* from the borrower, and does not apply to
*indirect* payments of yield spread . . . premiums from the lender to
the mortgage broker." <u>Id.</u> at 1190-93 (emphasis in original) ("The
assertion that all borrowers ultimately pay for the yield
[spread] . . . premiums through higher interest rates is too
strained a reading of 'collect' to compel inclusion of such
indirect payments.").[5]

---

[5] *Accord* <u>Dominguez v. Alliance Mortg. Co.</u>, 226 F. Supp. 2d
907, 909-11 (N.D. Ill. 2002) ("We agree with the litany of cases
holding that the [FHA and HUD] 1% limit on origination fees only
applies to fees directly collected from the borrower, not
indirectly collected through interest payments." (citing
<u>Bjustrom</u>)); <u>Vargas v. Univ'l Mortg. Corp.</u>, No. 01 C 0087, 2001 WL
1545874, at *3 (N.D. Ill. Nov. 29, 2001) ("The directive puts an
upper limit on 'origination fee[s]' which are paid by the borrower
to the broker; it says nothing about YSPs which are paid by the
lender." (citing <u>Bjustrom</u>)); <u>Byars v. SCME Mortg. Bankers, Inc.</u>,
135 Cal. Rptr. 2d 796, 802-03 (Cal. Ct. App. 2003) (adopting the
reasoning of <u>Bjustrom</u> to conclude that "[t]he payment of a YSP does
not violate the HUD regulation imposing a 1 percent cap on loan
origination fees"); *see also* <u>Geraci v. Homestreet Bank</u>, 203 F.
Supp. 2d 1211, 1213-15 (W.D. Wash. 2002), *aff'd*, 347 F.3d 749 (9th
Cir. 2003) (adopting <u>Bjustrom</u>, and concluding that a YSP "should
not be included as part of the one percent cap on origination fees
imposed by [the Veterans Affairs lending regulation]"--which
provides "[a] lender may charge and the veteran may pay a flat
charge not exceeding 1 percent of the amount of the loan"--because
the lender, not the borrower, pays the broker the YSP fee); <u>Kolle
v. SGB Corp.</u>, No. 01 C 5708, 2002 WL 31133183, at *2-5 (N.D. Ill.
Sept. 25, 2002) ("Because the court concludes that yield spread
premiums do not apply toward the 1 % cap placed on veterans' fees
under VA regulations, Count V must be dismissed." (citing
<u>Bjustrom</u>)).

The Texas constitutional mandate that valid home equity loans must "not require *the owner or owner's spouse* to pay" fees in excess of three percent of the principal is a plain proscription of excess *payments* being required from the *owner*.  None of the YSP was required to be paid by Plaintiff, and its payment by the *lender* is not chargeable to Plaintiff.  The amount of the YSP is therefore not included within the 3% fee calculation.  *See* TEX. CONST. art. XVI, § 50(a)(6)(E); *see also*, Regulatory Commentary on Equity Lending Procedures ("Commentary") at 4 (Oct. 7, 1998); 7 TEX. ADMIN. CODE 153.5(5) ("There is no restriction on a lender absorbing costs that might otherwise be fees, and, therefore, covered by the fee limitation.").

Plaintiff argues that he must "pay" the YSP fee in the form of higher interest payments to the lender.  The lender's theoretical recoupment of the YSP via the owner's interest payments, however, does not alter the nature of what the owner is actually paying: namely, *interest*.  Again, the "literal text" and "plain language" of art. XVI, § 50(a)(6)(E) is to proscribe "fees" of more than 3% "*in addition to any interest*."  (Emphasis added).  If interest is being paid, therefore, it is *not* a fee subject to the 3% limitation.  Even if it is presumed that the lender over the life of the note recoups the amount of the YSP (and presumably other costs and overhead associated with the lending business) from the owner's payments of interest on the note, the owner's payments

12

still cannot be characterized as anything other than interest in accordance with the terms of the note. *See*, *e.g.*, Bank of New York v. Mann, No. 02 C 9265, 2004 WL 1878293, at *4-6 (N.D. Ill. Aug. 18, 2004) (interpreting a limitation on loan charges proscribed by the Illinois Interstate Act, and *holding* that YSP fees paid by lender to broker were not charged to borrower: "Although a YSP could reasonably be found to be a charge payable indirectly by the borrower by way of a higher interest rate, it is not a charge *in addition to the stated rate of interest*." (emphasis added)).

The Texas Department of Banking and three other Texas administrative agencies with oversight responsibilities involving lending have issued a regulatory commentary ("Commentary") on home equity lending procedures, which the Texas Supreme Court has consulted and cited for advisory help in its decision on a home equity loan case. *See* Stringer v. Cendant Mortg. Corp., 23 S.W.3d 353, 357 (Tex. 2000) ("Although the commentary is advisory and not authoritative, it represents four Texas administrative agencies' interpretation of the Home Equity Constitutional Amendment."). As applied to this case, the Commentary states that "[t]he three percent limitation pertains to fees charged to or paid by the [borrower] *at the inception of the loan*." Commentary at 4 (emphasis added); *see also* 7 TEX. ADMIN. CODE 153.5(15). It is uncontroverted that YSPs are not "charged to or paid by the [borrower] at the inception of the loan," but at most--in the

Plaintiff's own description of his claim--are recovered by the lender *over the course of the loan* from the borrower via interest payments.  *See* Document No. 39 ¶ 14.  How Texas's administrative and regulatory agencies understand and apply the constitutional proviso furnishes persuasive secondary authority as to why Plaintiff's payments of interest over the life of the loan cannot be recharacterized as "payments" of a YSP by Plaintiff subject to the 3% constitutional limitation on fees actually paid at closing.[6]

---

[6] This reasoning has been applied in analogous cases.  In *In re Mourer*, a bankruptcy case, the debtor-borrower asserted that the creditor-lender violated Truth in Lending Act ("TILA") and Home Ownership and Equity Protection Act ("HOEPA") by charging the debtor fees and points which exceeded an eight percent limitation in TILA and HOEPA, triggering certain disclosure requirements that were not met.  309 B.R. 502, 504 (W.D. Mich. 2004).  The TILA/HOEPA regulation at issue in Mourer provides in pertinent part, "The total points and fees payable by the consumer *at or before loan closing* will exceed the greater of 8 percent of the total loan amount . . . ."  12 C.F.R. § 226.32(a)(1)(ii) (emphasis added).  Relying on the "law's clear and unambiguous language," the district court reversed the bankruptcy judge, and held that a "YSP is not properly included in the calculation of the 8% trigger" because there was "no evidence or even contention that the [borrowers] paid the YSP at or before loan closing.  The YSP was paid by [the lender] to [the mortgage broker] at the time of closing, but to the extent this obligation was payable by the [borrower], it was payable in the form of a higher interest rate, not at or before the closing, but over the course of the loan."  Id. at 505; *accord* Mills v. Equicredit Corp., 344 F. Supp. 2d 1071, 1076-77 (E.D. Mich. 2004) ("Plaintiffs have brought forth no evidence or contention that they paid the yield spread premium at or before closing.  Further, Plaintiffs have provided no legal authority to support the position that the yield spread premium should be included in the calculation of the 8 percent trigger.  Accordingly, the Court holds that pursuant to relevant case law and the plain language of 12 C.F.R. § 226.32(a)(1)(ii) the yield spread premium should not be included in the 8 percent trigger calculation." (citing Mourer)), *aff'd*, 172 F. App'x 652 (6th Cir. 2006); *see also* Wolski v. Fremont Inv. & Loan, 25 Cal. Rptr. 3d 500, 503-08 (Cal.

　　　2.　　U.S. Bank's Request for Summary Judgment on Plaintiff's
　　　　　Claim Regarding the Alleged $300 Appraisal

Plaintiff alleges in his Original Petition that he "receiv[ed] letters and phone calls seeking to collect . . . $300 for the appraisal that was actually used in making the loan," and that this fee (in addition to the $250 appraisal fee recorded on the HUD statement) would cause the three percent limitation to be exceeded. *See* Document No. 1, ex. Orig. Pet. at 4.　U.S. Bank requests summary judgment on this claim because Plaintiff "has not produced any document to support his claim that a second appraisal report . . . was prepared or that he gave notice of the alleged excessive fees."　*See* Document No. 31 at 11-12.　U.S. Bank contends, moreover, that Plaintiff has suffered no damage because there is no proof that he "actually incurred the expense of the [alleged $300] appraisal."　Id.　Indeed, there is no summary judgment evidence sufficient to raise a genuine issue that Plaintiff was in fact charged a second appraisal fee, or that he paid such a fee. Accordingly, U.S. Bank is entitled to summary judgment denying Plaintiff's claim that he was charged or incurred an additional $300 appraisal fee.

_____

Ct. App. 2005) (holding that under California's predatory lending statutes--providing that a loan is subject to the statutes if "[t]he total points and fees payable by the consumer at or before closing for a mortgage or deed of trust will exceed 6 percent of the total loan amount"--YSPs are not subject to the six percent limitation because they are not paid "at or before closing" (citing Mourer)).

    3.   Calculating  the  Fees  Subject  to  the  Three  Percent
         Limitation in Plaintiff's Home Equity Loan

    The  summary  judgment  evidence  establishes  that  the  fees
charged  to  Plaintiff  and  therefore  subject  to  the  three  percent
limitation were:

    1.   $3,237.50 as a loan origination fee,

    2.   $250 as a appraisal fee,

    3.   $200 as a document preparation fee,

    4.   $110 for attorney's fees,

    5.   $1,094 for title insurance,

    6.   $25 for a tax deletion,

    7.   $50 for an EPA lien endorsement fee,

    8.   $273.50 in other endorsements,

    9.   $50 as a messenger fee,

    10.  $125 as an escrow fee,

    11.  $78 as a recording fee, and

    12.  $64.95 for a tax certificate.[7]

---

    [7] It is undisputed that two other items on the HUD statement,
$1,743.75 in loan discount points and $34.24 in per diem interest,
are not subject to the three percent limitation. *See* Document No.
1, ex. Orig. Pet. ¶ 6.2; Document No. 31 at 8-9; *see also* <u>Tarver</u>,
69 S.W.3d at 711-12 ("Therefore, we hold that points are a form of
'interest' and not subject to the three-percent limitation.").

*See* Document No. 31, ex. B (HUD Statement) at lines 800-1400.[8]  The gross fees subject to the three percent limitation are $5,557.95, less a $2,070.45 closing cost credit allowed to Plaintiff, leaving a net total of $3,487.50 in fees actually charged to and paid by Plaintiff.   This sum is exactly equal to the three percent limitation--*i.e.,* three percent of the principal loaned: $116,250. Accordingly, Plaintiff was not required "to pay, in addition to any interest, fees . . . that exceed, in the aggregate, three percent of the original principal amount of the extension of credit."  *See* TEX. CONST. art. XVI, § 50(a)(6)(E).  The Loan complied with section 50(a)(6)(E), and thus the Note and Lien are not rendered invalid by the constitutional proscription.

B.   PAMI's Motion for Summary Judgment

    PAMI, the intervenor-plaintiff, moves for summary judgment on its causes of action against Plaintiff for breach of contract and for suit on the Note.   *See* Document No. 34.   Under Texas law, to

_____

    [8] Plaintiff's contention that the issuance of the final HUD Statement five days after the closing made it untimely, *see* Document No. 35 ¶ 22, is without merit.  *See* Doody, 49 S.W.3d at 346 ("[T]hrough section 50(a)(6)(Q)(x)'s cure provision, the amendment provides a means for the lender to correct mistakes within a *reasonable time* in order to validate a lien securing a section 50(a)(6) extension of credit." (emphasis added)); Fix v. Flagstar Bank, FSB, 242 S.W.3d 147, 157-59 (Tex. App.--Fort Worth 2007, no pet. h.) (three months is a reasonable time to cure a pre-2003 loan); *see also* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x) (amended in 2003 in order to codify Doody's holding allowing a reasonable time to cure, and giving the lender sixty days to cure).

succeed on a suit on an unpaid debt, "[PAMI] ha[s] the burden to establish (1) the existence of the debt or note; (2) that [Plaintiff] has signed the note; (3) that [PAMI] was the holder of the note; and (4) that a balance was due and owing under the note." Doncaster v. Hernaiz, 161 S.W.3d 594, 602 (Tex. App.--San Antonio 2005, no pet.) (citing Hudspeth v. Investor Collection Serv. L.P., 985 S.W.2d 477, 479 (Tex. App.--San Antonio 1998, no pet.). Plaintiff challenges the first and third elements above.

Plaintiff's challenge as to the first element, which is based on his erroneous interpretation of article XVI, section 50(a)(6)(E) of the Texas Constitution, discussed above, is without merit.  The uncontested summary judgment evidence establishes that Plaintiff signed the Note--thus satisfying the second element. *See* Document No. 31, ex. A-1 (the Note).  The summary judgment evidence also establishes that U.S. Bank transferred the Note and Lien to PAMI, thereby satisfying the third element. *See* Document No. 31, ex. A-5 (Transfer to PAMI).  The uncontroverted summary judgment evidence further establishes that Plaintiff is in default on the accelerated Note, there being an outstanding total amount of $128,085.93 as of March 6, 2008--satisfying the fourth and final element.  *See* Document No. 34, exs. A ¶ 8 (Hawk Decl.), A-7 (Notice of Default).

PAMI is entitled to judgment as a matter of law on its cause of action for suit on the Note and for breach of contract.[9]

C.   Declaratory Judgment and Order Allowing Foreclosure

PAMI seeks a declaratory judgment that: (1) Plaintiff is in default under the valid Note and Lien; (2) PAMI is entitled to recover the outstanding balance on the Note, pre- and post-judgment interest, costs, and attorneys' fees; and (3) PAMI may pursue all appropriate foreclosure remedies under the Lien and state law. *See* Document No. 34 at 8.

The only defenses raised by Plaintiff to these claims are challenges to the validity of the Note and Lien under the Texas Constitution and a challenge as to PAMI's standing to sue on the Note and Lien--both of which are discussed and rejected above. The uncontroverted summary judgment evidence is that Plaintiff has made no payments on the Loan since June 10, 2005, and has lawfully been served with a notice of default and acceleration. *See* Document No. 34, ex. A (Hawk Decl.) ¶ 8, ex. A-7 (Notice of Default). It is uncontroverted that even after he received the Notice of Default,

---

[9] "The essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Aguiar v. Segal, 167 S.W.3d 443, 450 (Tex. App.-- Houston [14 Dist.] 2005, pet. denied).

Plaintiff has continued to refuse to make any payments on the Loan and the amount owed by Plaintiff as of March 6, 2008 was $128,085.93. *See* <u>id.</u>, ex. A (Hawk Decl.) ¶ 8. Accordingly, Defendants are entitled to declaratory judgment that Plaintiff is in default, and that PAMI is entitled to have and recover the $128,085.93 outstanding balance on the Note as of March 6, 2008, pre- and post-judgment interest, and reasonable attorneys' fees and expenses in accordance with the Note.

Under Texas law, "[a] party seeking to foreclose a lien created under TEX. CONST. art. XVI, § 50(a)(6), for a home equity loan . . . may file . . . a suit . . . seeking a final judgment which includes an order allowing foreclosure under the security instrument and TEX. PROP. CODE § 51.002," as PAMI did here. TEX. R. CIV. P. 735. Given the uncontroverted summary judgment that: (1) a debt exists; (2) the debt is secured by a lien created under § 50(a)(6); (3) Plaintiff is in default under the Note and security instrument; and (4) Plaintiff received a notice of default and acceleration, PAMI is entitled to an order allowing foreclosure under the security instrument and TEX. PROP. CODE § 51.002.

PAMI's proof of its attorneys' fees is commingled with fees incurred by U.S. Bank, which did not seek attorneys' fees in its pleading. A party may recover only its own attorneys' fees.[10] In

---

[10] PAMI's reliance on a theory that U.S. Bank's and PAMI's claims were "inextricably intertwined" is misplaced. The cases cited by PAMI apply the theory of "inextricably intertwined" claims

the interest of justice, the Court will allow PAMI within fourteen days after the entry of this Memorandum and Order to file supplemental verified proof establishing the amount of reasonable attorneys' fees and expenses incurred solely by PAMI in enforcing the Note.

## IV.   <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant U.S. Bank, N.A.'s Motion for Summary Judgment (Document No. 31) is GRANTED, and Plaintiff Anthony E. Maluski shall take nothing against Defendant U.S. Bank, N.A. and his claims are DISMISSED on the merits; it is further

ORDERED that Intervenor Property Asset Management, Inc.'s Motion for Summary Judgment (Document No. 34) is GRANTED as follows:   the following sums are due and owing to Intervenor Property Asset Management, Inc. by Plaintiff Anthony E. Maluski, and are secured by the Security Instrument on the property that is

---

where single parties face multiple, intertwined claims. *See, e.g.,* <u>Tony Gullo Motors I, L.P. v. Chapa</u>, 212 S.W.3d 299, 310-14 (Tex. 2006) (reviewing the "inextricably intertwined" exception to the American rule that parties should bear the cost of their attorney's fees in a case where one plaintiff had multiple theories of recovery against a single defendant); <u>Rx.com v. Hruska</u>, H-05-4148, 2008 U.S. Dist. LEXIS 82493, at *14-16 (S.D. Tex. Oct. 20, 2006) (Miller, J.) (allowing a single defendant to recover attorney's fees when defending multiple claims which were "inextricably intertwined").   PAMI does not cite any case applying the theory of "inextricably intertwined" claims in a case allowing one party to claim and recover the fees incurred by an unrelated party to the same suit.

the subject of this cause: (a) the outstanding balance of the Note in the amount of $128,085.93 as of March 6, 2008; (b) prejudgment interest; (c) post-judgment interest from the date of judgment until paid; and (d) reasonable attorneys' fees and expenses incurred in enforcing the Note; and it is further

ORDERED that Property Asset Management, Inc. is authorized to foreclose on the property that secured the Note indebtedness, to wit:

> Lot Fifteen (15), in Block Eleven (11) OF NORHILL
> ADDITION, a subdivision in Harris County, Texas,
> according to the map or plat thereof recorded at Volume
> 6, Page 3 of the Map Records of Harris County, Texas,

pursuant to the Note and the Security Instrument and TEX. PROP. CODE § 51.002; and it is further

ORDERED that Plaintiff Anthony E. Maluski's Motion for Summary Judgment (Document No. 39) is DENIED; and it is further

ORDERED that within fourteen (14) days after the entry of this Memorandum and Order, Intervenor Property Asset Management, Inc. may file supplemental verified proof establishing the amount of reasonable attorneys' fees and expenses that have been incurred by PAMI in enforcing the Note, and which therefore may be properly included as a debt of the Loan; and within seven (7) days after having been served with PAMI's Supplemental Proof, Plaintiff may

22

file a response thereto.   A Final Judgment will thereafter be entered.[11]

    The Clerk shall notify all parties and provide them with a true copy of this Order.

    SIGNED at Houston, Texas, on this 1st day of December, 2008.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

---

[11] Because no issues remain to be tried, this case is REMOVED from Docket Call on December 5, 2008.